**UNITED STATES of America, Plaintiff,**

v.

**Bobby COLLINS, Jr. and Jose Luis Lara–Patracia, Defendants.**

Crim. A. No. 93–CR–248.

United States District Court, D. Colorado.

Nov. 30, 1993.

James R. Allison, Interim U.S. Atty., Charlotte J. Mapes, Asst. U.S. Atty., Denver, CO, for plaintiff.

Steven M. Feder, Michael G. Katz, Federal Public Defender, Virginia Grady, Asst. Federal Public Defender, Denver, CO, for defendants.

## ORDER REGARDING MOTION TO DISMISS

SHERMAN G. FINESILVER, Chief Judge.

This matter is before the Court on Defendant Bobby Collins, Jr.'s *Motion To Dismiss Indictment.* The Government filed a response to Defendant's motion. The Court heard oral arguments on the motion at a hearing held on November 22, 1993. Also at the hearing, the parties stipulated that the Court could treat the totality of the evidence that was before the Honorable Jim Carrigan, District Judge, in the matter of 93–CR–215, *United States of America v. Bobby Collins, Jr.,* as if it were before this Court. The Court has obtained transcripts of the motions hearings held in 93–CR–215,[1] and has considered the transcripts, the parties' briefs, and the testimony heard at the motions hearing on November 22, 1993 in deciding the merits of the motion to dismiss.

In addition to hearing testimony on Defendant's *Motion To Dismiss Indictment,* the Court also heard argument regarding Defendant's *Motion To Suppress Evidence* and Defendant's *Motion For Disqualification* of Assistant United States Attorney Charlotte J. Mapes. Both of Defendant's motions were DENIED at that time.

The Court has considered carefully the testimony of the Defendant at the motions hearing held on November 22, 1993. The Court has concluded that his explanation of the events surrounding the attempted drug trafficking transaction charged in this case does not permit a finding by the Court that the government acted outrageously, and thus his motion to dismiss based on alleged outrageous government conduct must fail.

### I.

The Defendant originally became involved with the FBI as a Cooperating Witness in January of 1993. The origins of that relationship stem from a sale of crack cocaine the Defendant made to an undercover agent on September 4, 1992. Defendant's motion to dismiss in 93–CR–215 was granted as a result of ambiguities in the nature of what may have been promised to the Defendant regarding that earlier drug transaction in exchange for his cooperation. That transaction is not at issue in the present case.

At various points in the hearings held in both cases, witnesses testified that it was possible that Mr. Collins would be asked at some point to set up drug deals, possibly while wearing a wire. *See, e.g.,* Agent Schlaff's testimony in 93–CR–215, Transcript of motions hearing held October 26, 1993, at 30 (Agents originally told Defendant that: "[a]t times he may be required to wear a body transmitter or body recorder to record these conversations with subjects of an investigation. That he may be asked to introduce an undercover agent to a suspected drug dealer or make an effort to make purchases or in effect make purchases himself from targets of our investigation"). Agent Schlaff testified, after being asked by the prosecutor what he had told Mr. Collins about "taking proactive action on his own part": "That he was not authorized to participate in any criminal activity without first notifying us first [sic] and that would be after we were approved to operate him as a cooperating witness from headquarters". *Id.* at 36–37.

The testimony of witnesses from the FBI was that the Defendant in fact never provided very much information to them. He initially identified his crack dealer; he told the agents he could give them information about a dealer in large quantities of marijuana; and he gave them some information relating to a murder suspect, although the value of that information is disputed. *See* testimony of Agent Schlaff, *id.* at 41 (the Defendant provided cooperation, "but the cooperation was very minimal, very unproductive, hard to follow up on. Unuseful, in my view"). When asked if the agent had sought "to have him do any deals", Agent Schlaff responded: "We didn't have any specific targets in mind, so

---

1. The record of those proceedings was ordered sealed by Judge Carrigan on November 1 and November 2, 1993; upon the Government's motion, on November 9, 1993, Judge Carrigan ordered the record unsealed for the limited purpose of transcription and disclosure to the parties in 93–CR–215 and to the judges and staff of the United States District Court for the District of Colorado.

no, I didn't ask him to do any specific deals." There was also testimony by Agent Schlaff that it was always he or another agent who would get in touch with the Defendant, although the agents had repeatedly advised him that they wanted to hear from him and had given him their telephone and pager numbers.

On cross examination by Collins' attorney, Steven Feder, Esq., Agent Schlaff was asked again about instructions given to Mr. Collins regarding what was expected of him as a Cooperating Witness. Agent Schlaff explained that what the FBI wanted was for Collins to "[p]rovide pager numbers and license plate numbers of people he is coming in contact with that are dealers or he thinks are dealers. Let us do some follow up." Mr. Feder asked Agent Schlaff: "You wanted him to associate with drug dealers and find drug dealers and gang numbers [sic]; is that what you are saying?" Agent Schlaff replied: "Yes." *Id.* at 74.

Mr. Feder also asked Agent Schlaff what he had told Mr. Collins in the way of what *not* to do as a Cooperating Witness. Agent Schlaff testified that "[t]here is probably a list of five or six things. One very important one is not to be involved in any criminal activity without first prior authorization from the FBI." *Id.* at 85. On re-direct by Mr. Wallace, Agent Schlaff was asked: "And part of your rules in working with him is that he was not to do any deals on his own?" Agent Schlaff replied: "Yes." Mr. Wallace: "He would have to act only after informing you and acting under your direction?" Answer: "Correct." *Id.* at 87.

The Defendant testified that he had been told by the agents not to get in any trouble. The Court asked Mr. Collins whether or not he considered the activity charged in this case, the alleged attempted purchase of 5 kilograms of cocaine, to be "trouble". The Defendant testified that he did *not* believe it was trouble, as he was not actually going to buy the cocaine. Instead, he indicated, he was solely interested in obtaining information on dealers in large quantities of cocaine, in order to satisfy the FBI agents according to the agreement he had with them to provide additional information before leaving for col-

lege in late July. The following exchange took place when Mr. Collins testified at the motions hearing in case number 93–CR–215 before Judge Carrigan:

Collins: Every time I met one of them [FBI agents] they asked me about new information but they never told me what I shouldn't do. The only thing they told me I shouldn't do is tell anybody about me being a cooperating witness.

Wallace (Assistant United States Attorney Craig F. Wallace, Esq.): Did they tell you for example that you weren't authorized to go out and set up drug deals on your own?

Collins: No, they never told me that.

Wallace: They never said to you, don't set up any deals without checking with us first?

Collins: No, they never told me that. Basically, my impression was to just find out information, and if I know where drugs are at I just call them and let them know.

Wallace: So they didn't tell you to set up any deals, did they?

Collins: They told me just find out information. No, they didn't tell me to set up any deals.

Wallace: Just pass on information?

Collins: Yes.

Wallace: If you had information, Mr. Collins, was it your responsibility to contact [FBI] Agent Schlaff with the information or [FBI] Agent Castro?

.    .    .    .    .

Collins: First of all, I would find out information and let them know.

Wallace: You were to page them; is that right?

Collins: Yes.

Tr., Motions Hearing, 93–CR–215, November 2, 1993, at 18–19.

Additionally, Mr. Collins testified that at the meeting he had with Agents Castro and Randolph on May 21, 1993 to rescind his permission to wear a body wire, the following conversation took place:

Collins: ... I was still cooperating with them, and they asked me, are you saying that you no longer want to be a cooperating witness, and I told them, yes, I still want to be a cooperating witness. Then I asked them, I told them, I will just set someone up at a specific place and specific time. And I will just call you guys, and they agreed to it.

*Id.* at 23.

Later, the Defendant testified that he was told by an agent in March that the FBI was not interested in marijuana dealers:

... he said he wasn't interested in marijuana, that I should go find cocaine dealers. Someone with a large amount of cocaine. And then I said, okay. I will try to find someone that is selling large amounts of cocaine, and that was it, and I told him I would just give him a call.

*Id.* at 27.

## II.

At the hearing before this Court, the Defendant testified regarding the transaction at issue in 93–CR–248. He was asked by the Court why he had not called any FBI agents before the deal went as far as it did, as in his testimony he had repeatedly indicated that his plan was to locate dealers and telephone the agents about them. The Defendant testified that he was planning on telling the FBI about it, but that he would not do so until he found out whether the cocaine was real; he testified that he had never seen such a large amount of cocaine before, and that he thought the other participants might be pulling his leg.

The Defendant's testimony that he wanted to make sure this quantity of cocaine was "real" before contacting the FBI stretches credulity. The Defendant testified that all along the agents had asked him for pager and license plate numbers, and had not asked him to consummate any drug transactions. Yet Mr. Collins did not notify the FBI in advance of the deal that there was a *possibility* of a large cocaine transaction happening, and once he was arrested on July 21, 1993, he did not identify himself as working on behalf of the FBI. The Court is not per-suaded by the Defendant's testimony that he did not consider the attempted transaction on July 21, 1993 to be "trouble".

The oral promise originally entered into by Collins and the FBI was ambiguous regarding whether or not the Defendant would ever be charged with the earlier drug transaction of September 1992, as a result of which the indictment relating to that offense as charged in 93–CR–215 was dismissed by Judge Carrigan. The Court finds that the agreement could not reasonably be found to be ambiguous as to whether or not Mr. Collins was expected to find information relating to cocaine dealers, and whether or not he was to conclude drug transactions without the government first being notified.

It seems clear that by July 21, 1993, the time the attempted transaction in this matter took place, Defendant was no longer providing the government with any information. After the May 21, 1993, meeting with the FBI in which he rescinded his permission to wear a wire or record conversations, Mr. Collins had had no communication with the agents with the exception of a short telephone conversation in early July, 1993. In fact, when he was paged at that time by an FBI agent, Mr. Collins sent his mother to meet the agent instead. Mr. Collins has provided no explanation—save that he was waiting to see if the cocaine was "real"—as to why, if he believed that all the FBI wanted was some more information from him, and then he could go away to college without any further "debt", he did not simply contact the agents when the instant deal was being arranged. The Tenth Circuit Court of Appeals has held that even when a defendant has provided evidence of acting as a government agent for some purposes, the government may be held accountable "only for [the agent's] actions that they knew of or in which they acquiesced." *Pleasant v. Lovell,* 974 F.2d 1222, 1228 (10th Cir.1992). *See also United States v. Bennett,* 729 F.2d 923 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984), *cited in Pleasant,* 974 F.2d at 1228. In *Bennett,* the Court held that the government was not responsible for an informant's acts that were "in direct contravention" of an agent's instructions. In the

transaction at issue in this case, the Defendant was acting neither under the direction of nor with the knowledge of the FBI agents with whom he was meant to be cooperating. His actions were in contravention of the agents' directions not to complete any drug transactions.

Whether the Court accepts that Mr. Collins was told not to get in trouble generally, or that he was told specifically not to commit any federal offenses, it seems clear that taking the chance of getting arrested while involved in whatever manner in a major cocaine buy, was in direct contravention of those instructions. This particular transaction was outside the FBI's purview; it was set up by the Drug Enforcement Administration and the Lakewood Police Department, and Mr. Collins was brought into the transaction by his co-defendant, rather than anyone acting on behalf of the FBI.

### III.

The Court finds that the Defendant has not met his burden of proving that the government, with regard to the particular conduct charged in this case, acted outrageously so as to violate "that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (citation omitted). The Defendant's contention that the government manipulated the Defendant into the position of attempting to purchase cocaine from a DEA informant does not in and of itself state a claim for outrageous conduct. *See United States v. Harris,* 997 F.2d 812, 816–817 (10th Cir.1993). We need not address the possibility of the effect of such a claim if the same FBI agents who had been working with the Defendant all along had engineered this transaction. In this case, the agencies involved had no prior knowledge of the Defendant. If Mr. Collins had called the FBI before, during, or even immediately after the attempted transaction involved, he might be in a different position today. The Court finds, however, that his predicament is not due to outrageous conduct on the government's part.

Accordingly, it is ORDERED that Defendant's *Motion To Dismiss Indictment* be **DENIED.**